## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FELICIANA G. REYES
7840 Woodman Avenue, Apt. 224
Panorama City, CA 91402

        Plaintiff,

    v.

UNITED STATES NATIONAL ARCHIVES
AND RECORDS ADMINISTRATION
700 Pennsylvania Avenue, NW
Washington, DC 20408

        Defendant.

No. 1:17-cv-1497

## **COMPLAINT**

1.    This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 et seq., seeking the release of withheld records about the Filipino Veterans Equity Compensation Fund ("FVECF") Interagency Working Group ("IWG") and that relate to the report U.S. ARMY RECOGNITION PROGRAM OF PHILIPPINE GUERRILLAS ("Army Report"), dated *circa* 1949. Feliciana G. Reyes ("Ms. Reyes"), ninety years old, served in a recognized guerrilla force in the Philippines during World War II, i.e., one under a commander who was appointed, designated or recognized by General Douglas MacArthur, the Commander-in-Chief of the Southwest Pacific Area ("CINCSWPA"). But the Army Report reveals that *all women*—like Ms. Reyes—*were denied recognition* for their guerrilla service except "nurses." Consequently, although Ms. Reyes was a "ward attendant" in a medical corp, she has been denied the FVECF benefit because Army refuses to certify her service.

2.     Ms. Reyes seek declaratory, injunctive, and other appropriate relief with respect to the National Archives and Records Administration's ("NARA") unlawful withholdings of records requested under FOIA.

## JURISDICTION AND VENUE

3.     This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 5 U.S.C. § 552(a)(4)(B).  In addition, this Court has jurisdiction pursuant to the APA, 5 U.S.C. §§ 701-706.  This Court has jurisdiction to grant declaratory and further necessary or proper relief pursuant to 28 U.S.C. §§ 2201-2202 and Federal Rules of Civil Procedure 57 and 65.

4.     Venue lies in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e) because the defendant is located in the District of Columbia and a substantial part of the events or omissions giving rise to the claims occurred in this district.

## THE PARTIES

5.     Plaintiff Feliciana G. Reyes is an individual residing at 7840 Woodman Avenue, Apt. 224, Panorama City, CA 91402.

6.     Defendant National Archives and Records Administration is a federal agency located at 700 Pennsylvania Avenue, NW, Washington, DC 20408.  NARA has possession, custody, and control over the records sought by plaintiff.  NARA is an agency within the meaning of 5 U.S.C. § 552(f)(1).  "NARA's core mission is to provide public access to the permanently-valuable records of the Federal government."[1]

---

[1] *See* https://www.archives.gov/files/about/plans-reports/performance-accountability/par2018.pdf at APP-3.

## <u>NATURE OF THE ACTION</u>

7.      Just prior to the turn of the twentieth century, the United States acquired the Philippines from Spain when the so-called Treaty of Paris was ratified to end the Spanish-American War. *See* "Treaty of Peace between the United States of America and the Kingdom of Spain," in Foreign Treaties and International Agreements; Spain, 30 Stat. 1754 (Dec. 10, 1898).   The Commonwealth of the Philippines was subsequently established in 1934 when Congress enacted the Philippine Independence Act, which in part provided that until "final and complete withdrawal of the sovereignty of the United States . . . [t]he Philippine Islands recognize[d] the right of the United States . . . to maintain . . . armed forces in the Philippines, and, upon order of the President, to call into the service of such armed forces all military forces organized by the Philippine government." 48 Stat. 456 (Mar. 24, 1934).

8.      During World War II, President Franklin D. Roosevelt "call[ed] and order[ed] into the service of the armed forces of the United States for the period of the existing emergency and place[d] under the command of a General Officer, United States Army . . . all of the organized military [except naval] forces of the Government of the Commonwealth of the Philippines."  Military Order of July 26, 1941, 6 Fed. Reg. 3825 (Aug. 1, 1941).

9.      Pursuant to that Military Order, the U.S. Army Forces in the Far East ("USAFFE") was created on July 26, 1941 with Major General Douglas MacArthur in command.  Gen. MacArthur subsequently became CINCSWPA, a military command of the Allied forces in a theatre that included the Philippines.

10.     To oppose the Japanese invaders, Filipinos created a resistance movement and became known as "guerrillas." Their service was so critical to the Allied efforts—especially during the reconquest of the Philippines from Japan—that their leaders exercised authority under direct command of Gen. MacArthur.

11.     On October 28, 1944, Philippine President Osmeña issued Executive Order No. 21 designating "[a]ll persons . . . who are actively serving in recognized military forces in the Philippines . . . to be on active service in the Philippine Army." *See* Executive Order No. 21 by the President of the Philippines (Oct. 28, 1944), *available at* https://www.gov.ph/documents/20147/190423/Executive+Order+No.+21%2C+s.+1944/08f96938-5878-f9ee-f8a8-41e0ca566adf?version=1.1. A "recognized military force" was defined as "a force under a commander who ha[d] been appointed, designated or recognized by [CINCSWPA]." *Id.* In other words, all guerrilla units recognized by CINCSWPA were also incorporated into the Philippine Army.

12.     During 1944-45, Ms. Reyes was a civilian guerrilla and served as a Ward Attendant in the Medical Corp of the 75th Infantry Regiment, with operations in the 7th Military District of the Philippines encompassing Negros Island, specifically in the southeast part known as Negros Oriental. This military force was specifically "recognized" by Gen. MacArthur. The 7th Military District—including its guerrilla force—later was placed under the operational control of the Eighth Army.

13.     As a Ward Attendant, Ms. Reyes assisted the Army doctors and nurses by treating wounds and attending the sick soldiers. A person serving as a ward attendant had a role that was distinct from, and subservient to, a nurse.

- 4 -

14.    With WWII having come to a close and the United States imminently relinquishing its sovereignty over the Philippines, President Harry S. Truman issued a Military Order, effective June 30, 1946, in which he "release[d] from the service of the armed forces of the United States all of the organized military forces of the Government of the Commonwealth of the Philippines called and ordered into the service of the armed forces of the United States pursuant to the Military Order of July 26, 1941." Military Order filed July 1, 1946, 11 Fed. Reg. 7394 (July 3, 1946); *see also* "Treaty between the United States of America and the Philippines and protocol respecting general relations," in Foreign Treaties and International Agreements; Philippines, 61 Stat. 1174 (July 4, 1946).

15.    The Army Report describes "the guerrilla resistance movement in the Philippines and the mission of the United States Army to award those valiant members of this fraternity who contributed materially to the defeat of the common foe, official guerrilla recognition. This recognition is tantamount to induction into the Philippine Army which during the late war was in the service of the Armed Forces of the United States, thus establishing their entitlement to soldier emoluments and veterans benefits." *See* **Exhibit 1** at Foreward.

16.    According to the Army Report, recognition of guerrillas "was constantly hindered [] [] by chaotic conditions incident to a total war . . . Under the most favorable reception the granting of guerrilla recognition to deserving Filipinos would have been extremely difficult to accomplish and hold the degree of error and injustice to an absolute nuance." *Id.* at 214.    But, quite simply, "it was impossible to exclude error in

recognitions." *Id.* at 215.  Claims for 7th MD guerrilla recognition were complicated in part by "chaotic personnel problems experienced by an army undergoing the process of rapid demobilization" and in part because original rosters of Eighth Army guerrillas, which had been submitted to GHQ SWPA, were "destroyed" or "lost in storage." *Id.* at Foreward, 108-09.

17.    As it turned out, guerrilla "recognition" by the U.S. Army had very limited practical meaning.  Congress infamously passed two Rescission Acts in 1946 (Public Laws 79–301 and 79–391) that essentially rendered the Filipinos ineligible for United States veterans' benefits.

18.    However, over sixty years later, the FVECF benefit was established by Congress in the Recovery Act, Pub. L. No. 111-5, § 1002, 123 Stat. 115, 200 (2009), with the potential to temper the long-standing sentiment among many Philippine veterans that their efforts on behalf of the United States were unappreciated.  Non-U.S. citizens and U.S. citizens who are "eligible" as defined in the Act are entitled to one-time payments of $9,000 and $15,000, respectively.  *Id.* at § 1002(e).  An "eligible person" is defined, *inter alia*, as "any person who . . . served . . . before July 1, 1946, in the organized military forces of the Government of the Commonwealth of the Philippines, while such forces were in the service of the Armed Forces of the United States pursuant to the military order of the President dated July 26, 1941, including among such military forces organized guerrilla forces under commanders appointed, designated, or subsequently recognized by [CINCSWPA]." *Id.* at § 1002(d)(1)(A).

19.     Ms. Reyes applied to the Department of Veterans Affairs ("VA") to receive the FVECF benefit over seven years ago, in February 2010.   VA has denied her eligibility, on the basis that Army refuses to certify that she performed "recognized" guerrilla service.   Specifically, Ms. Reyes' name has not been found on Army's reconstructed recognized guerrilla roster.   Yet, Army did find in its records a copy of a sworn Affidavit *from 1946*, signed by both Ms. Reyes *and an officer of the Army of the United States*, setting forth Ms. Reyes' guerrilla and USAFFE service.   Neither VA nor Army currently acknowledge the import of that Affidavit.

20.     Ms. Reyes is not alone.   In fact, VA has *denied* 23,779 FVECF claims (56%) while approving only 18,976 claims (44%).   *See WWII Filipino Veterans Equity Compensation (FVEC) Fund, Center for Minority Veterans (CMV)*, available at https://www.va.gov/centerforminorityveterans/fvec.asp (last reviewed July 26, 2017) (statistics as of June 1, 2017).

21.     Many Filipino veterans have believed that their FVECF claims were improperly denied by VA.   In 2012,

> [t]o address their concerns, the White House Initiative on Asian Americans and Pacific Islanders, in collaboration with the Office of Management and Budget, [] launched an Interagency Working Group [("IWG")] comprised of officials from the Department of Veterans Affairs, the Department of Defense, and the National Archives and Record Administration.   The Interagency Working Group [was] tasked with analyzing the process faced by these Filipino veterans in demonstrating eligibility for compensation in order to ensure that all applications receive thorough and fair review.   This [was] part of the Obama Administration's ongoing efforts to honor the contributions of all veterans in their service to our country.

*See* https://obamawhitehouse.archives.gov/blog/2012/10/17/honoring-filipino-world-war-ii-veterans-their-service.

22.    "Through the work of the [IWG], the National Archives and Record Administration [] released [the Army Report] that details the creation of the official Department of the Army Filipino Guerilla list.   It was declassified in 1988 . . .   The report is available [at https://catalog.archives.gov/id/6921767]."  *See* https://sites.ed.gov/aapi/filipino-world-war-ii-veterans/.

23.    The Army Report was previously classified as Secret.   According to its cover, only 25 copies of the Army Report were created.   Despite being "declassified in 1988," it was not readily available to the public.   Only a single copy is known to exist, found decades after it was declassified having been locked away in a safe at NARA.

24.    "This document details the creation by the U.S. Army in 1948 of the official Guerilla list that is being used to verify valid service for the FVEC.   This [was] the first time that this ***invaluable historical document*** [became] available to the general public."  *Id.* (emphasis added).

25.    The Army Report reveals, in matter-of-fact fashion, why Ms. Reyes' name is not listed on the reconstructed recognized guerrilla roster:

> [T]he close scrutiny given the functions of women guerrillas ultimately led to the belief that, [] ***excepting nurses, no women should be recognized***.  However, the unfamiliarity of American personnel with the spelling of female names in Spanish and in native dialect permitted the recognition of [only] a small number of women."

*See* **Exhibit 1** at 106 (emphasis added).[2]  Indeed, "a tightening up of requirements for guerrilla recognitions" included "[t]he close scrutiny of the service of women guerrillas." *Id.* at 113-14.

26.     Ms. Reyes is presently arguing in an appeal before the U.S. Court of Appeals for Veterans Claims ("CAVC") that the denial of the FVECF benefit to her, in part, violates the equal protection component of the Due Process Clause of the Fifth Amendment by intentionally discriminating against Filipino women who served as guerrillas.  *See Reyes v. Shulkin*, Vet. App. No. 16-2471 (CAVC).  An equal protection violation arises because men's names were included on guerrilla rosters whereas women's names were intentionally excluded, so men are able to more readily prove entitlement to the FVECF benefit than women.

27.     VA participated on the IWG that made the Army Report publicly available. Yet VA has argued in the CAVC appeal—in which Ms. Reyes relies on the Army Report—that the document "purports to have been prepared by the Philippines Command of the U.S. Army in 1949" and is "unverified as to its authenticity."  *See* **Exhibit 2** at 16. VA also has argued in the CAVC appeal that the Army Report was "neither actually nor constructively before the [Board of Veterans' Appeals] at the time of its decision."  *See* **Exhibit 3** at 4.

28.     Discovery is not available in connection with veterans' benefits claims, which are administratively handled by the VA and appeals of which are adjudicated

---

[2] The Army Report is reproduced in relevant part in Exhibit 1, but can be found in its entirety at https://catalog.archives.gov/id/6921767.

based upon the administrative record (the so-called "Record Before the Agency" or "RBA").

29.     Details about the IWG are difficult to locate.   Meeting minutes, for example, are not readily available to the public.   Yet details concerning the IWG's work in releasing the Army Report to the public are important to Ms. Reyes in her pending CAVC appeal.   They also are important to the tens of thousands of other FVECF claimants who have been denied eligibility for this benefit by the VA.

30.     The public is owed full and frank disclosure by NARA concerning the work of the IWG with respect to the Army Report.

**PLAINTIFF'S FOIA REQUEST AND
DEFENDANT'S FAILURE TO COMPLY WITH FOIA**

31.     By email dated March 21, 2017, Ms. Reyes submitted a FOIA request ("FOIA Request") to NARA requesting:

> all Records in the possession, custody, or control of NARA concerning the Filipino Veterans Equity Compensation Fund (FVECF) **Interagency Working Group (IWG) and** that reference, refer to, or relate to the report **U.S. Army Recognition Program of Philippine Guerrillas**, dated *circa* 1949. ¶ As used herein, the term "Records" includes but is not limited to meeting minutes of the IWG, memoranda involving the IWG, reports of the IWG, and instructions of the IWG. The term Records does not include an actual copy of the above-identified report.

*See* **Exhibit 4** (emphasis in original).

32.     The FOIA Request identified Scott Levins, Director of NARA's National Personnel Records Center (St. Louis), as having testified about the IWG and the Army Report before the Subcommittee on Oversight and Investigations, House Committee on

Armed Services, on June 24, 2014.  *Id.*  A highlighted copy of his testimony was

provided with the FOIA Request for reference.  *Id.*

33.     The FOIA Request sought expedited processing:

> **Expedited Processing** is hereby requested. . . . Ms. Feliciana
> Reyes[] is involved in legal proceedings concerning the
> Filipino Veterans Equity Compensation Fund (the subject
> matter of the IWG) in which she has an **urgent need for the
> requested Records**.  Ms. Reyes will potentially suffer the
> loss of substantial due process rights if the Records are not
> processed on an expedited bas[i]s.  Moreover, the subject
> matter related to the FOIA request—benefits for Filipinos
> who served in WWII—has met widespread and exceptional
> media interest and the information sought involves possible
> questions about the government's integrity that affect public
> confidence.  The news media has widely reported issues with
> veterans being found ineligible for this benefit and Congress
> has held hearings on the subject.  In addition, the records
> concern the government's knowledge of the 1949 report and
> its importance with respect to the Filipino Veterans Equity
> Compensation Fund.  The government recently questioned
> the "authenticity" of this report.  These statements are true
> and correct to the best of the knowledge of the undersigned.

*Id.* (emphasis in original).

34.     By email dated March 22, 2017, NARA acknowledged receipt of the FOIA

Request and assigned it Tracking No. NARA-NGC-2017-000417.  *See* **Exhibit 5**.

35.     By email dated April 3, 2017, NARA denied Ms. Reyes' request for

expedited processing, stating that "[y]ou have not explained how she will loose [sic] her

due process if your request is not answered" but also stating that the "request will be

answered within the 20 day framework of the FOIA."  *See* **Exhibit 6**.  The April 3, 2017

email did not address the widespread and exceptional media interest that also formed the

basis of the request for expedited processing.  *Id.*

36.     By email dated April 4, 2017, Ms. Reyes administratively appealed the denial of expedited processing of her FOIA request, stating:

> Requester hereby provides further arguments to support both factors under which requester has sought expedited processing:
>
> **(1) 36 C.F.R. § 1250.28(a)(2) ("reasonable expectation of an imminent loss of a substantial due process right")**: Requester, Ms. Reyes, is about ninety years old.  During World War II, as a civilian guerrilla, she served as a "ward attendant" (a role subservient to doctors and nurses) in the Medical Corp of the 75th Infantry Regiment, 7th MD comprising Negros Oriental, Philippines, caring for wounded soldiers.  Ms. Reyes has been denied eligibility to receive a one-time payment from the Filipino Veterans Equity Compensation Fund ("FVECF").  She is presently arguing, in part, in an appeal to the U.S. Court of Appeals for Veterans Claims ("CAVC"), that the denial of the FVECF benefit to her violates the equal protection component of the due process clause of the Fifth Amendment because, as a woman who served in a role with a title other than "nurse," her service was not recognized by the U.S. Army, amounting to gender discrimination.  Ms. Reyes' FOIA request concerns the publication **U.S. Army Recognition Program of Philippine Guerrillas**, dated *circa* 1949.   That Army publication describes the aforementioned discrimination, at least by stating: "[T]he close scrutiny given the functions of women guerrillas ultimately led to the belief that, [] *excepting nurses, no women should be recognized*.  However, the unfamiliarity of American personnel with the spelling of female names in Spanish and in native dialect permitted the recognition of [only] a small number of women."   In her appeal before the CAVC, the government recently questioned the "authenticity" of this report and its knowledge of the report.   Yet the report was made public in 2013 by the Interagency Working Group (IWG) (referenced in the FOIA request) with which NARA was involved.   Failure to grant expedited processing poses a risk to Ms. Reyes' ability to argue these points as part of her appeal that she has been denied due process under the Fifth Amendment to the Constitution.

(2) **36 C.F.R. § 1250.28(a)(4) ("matter of widespread and exceptional media interest in which there exist possible questions that affect public confidence in the Government's integrity")**:  The dispute about how the government determines eligibility for the FVECF benefit has been widely covered by media.  *See, e.g.*, Ben de Guzman, "Filipino WWII Veterans Immigration and Recognition: Connected Movements,"  THE HUFFINGTON POST (May 13, 2016) ("The discrimination Filipino WWII veterans have faced as unrecognized U.S. veterans has lasted for more than seventy years . . ."; "inequity and struggles still exist as work continues to try and fix the eligibility process and ensure everyone who served [receives] benefits"), available at http://www.huffingtonpost.com/ben-de-guzman/filipino-wwii -veteransim_b_9937400.html; Emil Guillermo, "99-Year-Old WWII Veteran Seeks Response Over Denied Benefits," NBC NEWS (May 31, 2016) (describing "a Filipino World War II veteran who is still seeking recognition and equity pay"), available at http://www.nbcnews.com/news/asianamerica/99- year-old-wwii-veteran-seeks-response-over-denied-benefits-n 582126.  In fact, the government's narrow interpretation of eligibility for compensation from the FVECF was the subject of *two* 2014 hearings in Congress.  *See* Filipino Veterans Equity Compensation Fund: Examining the Department of Defense and Interagency Process for Verifying Eligibility, Hearing Before the Subcommittee on Oversight and Investigations of the Committee on Armed Services, House of Representatives (June 24, 2014), *available at* https://www.gpo.gov/fdsys/pkg/CHRG-113hhrg89507/pdf/C HRG-113hhrg89507.pdf; Filipino Veterans Equity Compensation Fund: Inquiry into the Adequacy of Process in Verifying Eligibility, Hearing Before the Subcommittee on Disability Assistance and Memorial Affairs of the Committee on Veterans' Affairs, House of Representatives (Nov. 20, 2014), available at https://www.gpo.gov/fdsys/pkg/CHRG- 113hhrg96136/pdf/CHRG-113hhrg96136.pdf.  It also was the focus of the Interagency Working Group (IWG) (referenced in the FOIA request) convened by the White House from 2012-13 because "many Filipino veterans . . . believe[d] their claims were improperly denied." *See* https://obamawhite house.archives.gov/blog/2012/10/17/honoring-filipino-world- war-ii-veterans-their-service (Oct. 17, 2012); https://obama whitehouse.archives.gov/blog/2013/07/09/recognizing-extrao rdinary-contribution-filipino-veterans (July 9, 2013); https://si

tes.ed.gov/aapi/filipino-world-war-ii-veterans/. The govern-
ment's negative eligibility determinations clearly have raised
possible questions about the government's integrity which
effect public confidence. The report that is the subject of the
FOIA request was made public in 2013 by the Interagency
Working Group (IWG) (referenced in the FOIA request) with
which NARA was involved. It describes discrimination
against women, which affects public confidence in the
administration of benefits.

The above statements are certified to be true and correct to
the best of the undersigned's knowledge and belief.

*See* **Exhibit 7**.

37.     By email on April 25, 2017, Ms. Reyes administratively appealed the denial

of information requested under FOIA, "deem[ing] NARA's failure to provide a response

determination within the statutory time limits as a denial of the FOIA Request." *See*

**Exhibit 8**.

38.     By letter dated May 8, 2017, NARA granted Ms. Reyes' administrative

appeal of the denial of expedited processing, which had been assigned tracking no.

NGC17-44A, stating that her "FOIA request will be processed on an expedited basis" and

her "request is currently number six in [NARA's] expedited queue." *See* **Exhibit 9**.

39.     On information and belief, NARA has possession, custody, and/or control

of responsive and non-exempt records with respect to the FOIA Request, including but

not limited to emails between IWG participants, meeting minutes, and other documents

provided to, or prepared by, IWG participants that reference, refer to, or relate to the

Army Report.

40.     On information and belief, at least NARA employee Scott Levins is a

document custodian with records responsive to the FOIA Request.

41.     To date, no records have been produced by NARA to Ms. Reyes in response to the FOIA Request.

42.     Ms. Reyes has not received any response determination whatsoever from NARA in connection with the FOIA Request.

**FAILURE TO TIMELY MAKE A RESPONSE DETERMINATION
AND/OR MAKE RECORDS "PROMPTLY AVAILABLE" UNDER *CREW***

43.     "[I]n order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse."  *Citizens for Responsibility & Ethics in Wash. [CREW] v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013).

44.     "If the agency does not make a 'determination' within the relevant statutory time period, the requester may file suit without exhausting administrative appeal remedies." *Id.* at 185.

45.     The FOIA statute, 5 U.S.C. § 552(a)(6)(C)(i), also provides that "[a]ny person making a request to any agency for records . . . shall be deemed to have exhausted his administrative remedies with respect to such request if the agency fails to comply with the applicable time limit provisions of § 552(a)(6)."

46.     NARA has not sent Ms. Reyes any response "determination" in connection with the FOIA Request within the relevant statutory time period.

47.     "FOIA requires that the agency make the records 'promptly available,' which depending on the circumstances typically would mean within days or a few weeks of a 'determination,' not months or years." *CREW*, 711 F.3d at 188.

48.     NARA has not made responsive, non-exempt records promptly available to Ms. Reyes in connection with the FOIA Request.

**FIRST CAUSE OF ACTION:**
**Unlawful Failure to Disclose Agency Records**
**With Respect to the FOIA Request**

49.     Ms. Reyes repeats and re-alleges paragraphs 1-48 above.

50.     Ms. Reyes has a legal right under FOIA to obtain the agency records requested from defendant NARA in the FOIA Request, and no legal basis exists for defendant's failure to make available the requested records.

51.     With respect to the FOIA Request, defendant NARA's (i) failure to provide a response "determination," (ii) failure to exercise due diligence with respect to processing the request and making the requested records promptly available, and (iii) wrongful withholding of agency records are unlawful, and are in violation of FOIA, including 5 U.S.C. § 552(a)(3), as well as NARA's regulations promulgated under FOIA.

52.     Ms. Reyes is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records.

**SECOND CAUSE OF ACTION:**
**Violations of the Freedom of Information Act and NARA's FOIA Regulation**
**for Failure to Provide Expedited Processing With Respect to the FOIA Request**

53.     Ms. Reyes repeats and re-alleges paragraphs 1-52 above.

54.    The FOIA statute requires that each agency shall "provid[e] for expedited processing of requests for records" and that "[a]n agency shall process as soon as practicable any request for records to which the agency has granted expedited processing."  5 U.S.C. § 552(a)(6)(E)(i) & (iii).

55.    NARA's FOIA regulation provides that "NARA processes requests and appeals on an expedited basis whenever we determine that one or more of the following criteria exist: . . . (2) [a] reasonable expectation of an imminent loss of a substantial due process right; . . . or (4) [a] matter of widespread and exceptional media interest in which there exist possible questions that affect public confidence in the Government's integrity."  36 C.F.R. § 1250.28(a)(2) & (4).

56.    Failure to obtain the records requested in the FOIA Request on an expedited basis could reasonably be expected to pose an imminent loss of a substantial due process right of Ms. Reyes.  36 C.F.R. § 1250.28(a)(2).

57.    There is widespread and exceptional interest in the subject matter of the FOIA Request in which possible questions exist about the government's integrity which affect public confidence.  36 C.F.R. § 1250.28(a)(4).

58.    Ms. Reyes requested expedited processing at the time her FOIA Request was submitted on March 21, 2017.  NARA initially denied expedited processing on April 3, 2017 without considering all of the grounds on which expedited processing was requested.  NARA subsequently granted expedited processing on May 8, 2017 but, over two months later, still has not provided any response determination with respect to the FOIA Request.

59. NARA's failure to actually provide expedited processing of the FOIA Request violates FOIA as well as NARA's regulations promulgated under FOIA.

60. Ms. Reyes is entitled to declaratory and injunctive relief with respect to NARA's failure to provide expedited processing in connection with the FOIA Request.

### THIRD CAUSE OF ACTION:
**Violation of the Administrative Procedure Act for Failure to Timely Respond to Request for Agency Records With Respect to the FOIA Request**

61. Ms. Reyes repeats and re-alleges paragraphs 1-60 above.

62. The failures of defendant NARA to timely respond and provide expedited processing with respect to Ms. Reyes' FOIA Request for agency records, and defendant NARA's withholding of agency records, each constitute agency action unlawfully withheld and unreasonably delayed, in violation of the APA, 5 U.S.C. §§ 701-06. The failures of defendant NARA to timely respond and provide expedited processing, and NARA's withholdings, each are arbitrary, capricious, an abuse of discretion, not in accordance with law and without observance of procedure required by law, all in violation of the APA.

63. Ms. Reyes is entitled to declaratory and injunctive relief with respect to the release and disclosure of the requested records in connection with the FOIA Request.

### REQUESTS FOR RELIEF

WHEREFORE, Ms. Reyes requests that judgment be entered in her favor and against defendant, and that:

a) defendant and any of defendant's agents or other persons, offices, or components acting for, with, by, through or under them be ordered to promptly

conduct an expedited and reasonable search for records responsive to Ms. Reyes' request under FOIA;

b) defendant and any of defendant's agents or other persons, offices, or components acting for, with, by, through or under them be enjoined and restrained from continuing to fail to process and withhold records relevant to Ms. Reyes' request under FOIA and in violation of the APA;

c) the Court declare that the requested records are not exempt from disclosure under FOIA and order defendant to disclose the requested records in their entireties and make copies available to Ms. Reyes;

d) the Court enter a judgment awarding Ms. Reyes reasonable attorneys' fees and costs pursuant to 5 U.S.C. § 552(a)(4)(E) and 28 U.S.C. § 2412; and

e) the Court award all other such relief to Ms. Reyes as this Court deems just, proper and equitable.

Dated:  July 26, 2017                Respectfully submitted,

/s/ Seth A. Watkins
Seth A. Watkins (D.C. Bar # 467470)
    Email:  watkins@wlapllc.com
WATKINS LAW & ADVOCACY, PLLC
1001 G Street NW, Suite 800W
Washington, DC 20001
Telephone: (202) 355-9421
Facsimile: (202) 355-9424

Louis S. Mastriani (D.C. Bar # 386820)
    Email:  mastriani@adduci.com
ADDUCI, MASTRIANI & SCHAUMBERG, L.L.P.
1133 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 467-6300
Facsimile: (202) 466-2006

*Attorneys for Feliciana G. Reyes*